DICK MCLANAHAN, APPELLANT, V. CHARLES M. CHAMBER-
LAIN ET AL., APPELLEES.

FILED JANUARY 20, 1910.   No. 15,859.

1. **Mortgage on Homestead:** DELIVERY.   A mortgage upon the home-
stead, executed by husband and wife upon agreement to secure
certain claims of the mortgagee and left with the wife by the
husband, who thereupon absconded, may be delivered by the
wife, notwithstanding certain ·instructions to the wife by the
husband as to conditions of delivery had not been complied with
by her, the mortgagee not being aware of such instructions, and
receiving the same in good faith as a compliance with the agree-
ment to give such security.

2. **Mortgages:** COLLATERAL · SECURITIES.   Upon the facts stated in the
opinion, it is *held* that the mortgage in question was not given
in settlement of the plaintiff's claims, but as security collateral
thereto.

3. **Statute of Frauds.**   The execution and delivery of a note and mort-
gage to secure the debt of another is sufficient compliance with
the statute of frauds.

4. **Mortgage on Homestead:** CONSIDERATION: EVIDENCE.   C., being
cashier of a bank in which there was a deposit in the name of
the wife of M., agreed with M. that, if the deposit was allowed to
remain in the bank, he, C., would secure M. and his wife against
all loss.   Upon this agreement the deposit was allowed to remain
in the bank, and C. and his wife executed a mortgage upon their
homestead to M. as mortgagee pursuant to said agreement.   Soon
afterwards the bank failed.   *Held*, That the mortgage is a valid
security for said deposit and the same constitutes a good con-
sideration therefor.

5. **Statutes:** REPEAL BY IMPLICATION.   Whether section 5053, Ann. St.
1909, is repealed by implication by the married women's act of
1871 (laws 1871, p. 68), *quære.*

6. **Executors and Administrators:** DEFENSE BY ADMINISTRATRIX.   When
an administratrix has recovered a judgment in favor of her in-
testate's estate, and she is made defendant as such adminis-
tratrix in an action involving the validity of the judgment and
the priority of the lien, she may defend the action for all persons
interested, notwithstanding that she has married after recover-
ing the judgment.

7. **Homestead:** LIENS: PRIORITIES.   A mortgage executed and deliv-
ered before the lien of a judgment has attached to the excess

value of homestead property is superior to that lien, but the homestead exemption is $2,000 over and above all liens prior to the judgment; and, if the mortgage is subsequent to the lien of the judgment, that lien is not affected by the mortgage. The judgment creditor is entitled to excess value of the property over the homestead right, subject only to such liens as are prior to his judgment.

8. Appeal: BILL OF EXCEPTIONS. A document offered in evidence and excluded by the court should, at the request of the party offering it, be incorporated in the bill of exceptions. In no other manner can the ruling of the court thereon be presented to this court for review.

9. Judgment: PROCESS: RETURN. The return of a summons that it was served by leaving at defendant's "last known place of residence," etc., is defective, and a judgment rendered on such service is void.

10. Mortgages: FORECLOSURE: EVIDENCE. In an action to foreclose a real estate mortgage there must be some proof that there has been no action at law upon the indebtedness, or that such action, if any, has terminated without collection; but the ordinary rules in regard to proving a negative apply.

APPEAL from the district court for Johnson county: JOHN B. RAPER, JUDGE. *Affirmed in part and reversed in part.*

*S. P. Davidson,* for appellant.

*E. B. Quackenbush, Hugh La Master, J. C. Moore* and *F. L. Dinsmore, contra.*

SEDGWICK, J.

On the 14th day of October, 1908, the plaintiff began this action in the district court for Johnson county to foreclose a real estate mortgage upon certain lands in that county, executed by the defendants Charles M. Chamberlain and Edith R. Chamberlain, husband and wife. The remaining defendants were made parties because of claiming some interests in the real estate, which the plaintiff alleged were inferior to the lien of his mortgage. James A. McPherrin, at his own request, was afterwards made party, and also alleged two mortgages

upon the same premises, and, alleging some mistakes in one of the mortgages, asked to have the same reformed. Various questions are presented and discussed as to priority of liens and validity of some of the judgments pleaded, but the principal controversy is as to plaintiff's mortgage and the judgment claim of the defendant Florence M. Dew. As against the plaintiff's mortgage it is alleged by the defendant Chamberlain that it was without consideration, and was never delivered by him to the plaintiff. The judgment creditors alleged that the premises involved were worth at least $4,000, being $2,000 above the amount of the admitted homestead exemption, and that at the time the note and mortgage were given the defendant Charles M. Chamberlain was the cashier of the Chamberlain Banking House, which was then doing a banking business in said county and had been so doing for some years prior thereto; that the said banking house was about to go into the hands of the state banking board, and that on the 20th day of August, 1902, the said Charles M. Chamberlain was about to abscond and leave the country in order to avoid the payment of his debts, and in order to avoid his liabilities as cashier of said banking house, all of which was well known to the plaintiff herein; and that on said day the plaintiff and said Charles M. Chamberlain combined and conspired together to hinder and defraud the creditors of said Chamberlain, and in furtherance of their said wrongful and unlawful design the said Charles M. Chamberlain made and executed said note and mortgage as described in the petition, wholly without consideration, and the same was received by the plaintiff for the purpose and with the intent of hindering and delaying the creditors of the said Charles M. Chamberlain.

To the answer of Charles M. Chamberlain the plaintiff replied that, in a former action pending in the same court, in which the National Bank of Commerce was plaintiff and the said Charles M. Chamberlain was defendant, and said Edith R. Chamberlain, as intervener,

was made defendant, the said defendants, in order to defend against the lien of the National Bank of Commerce, set up that the plaintiff's mortgage herein sued upon was a valid lien upon the property involved in this suit, and that they were entitled to hold as exempt all of said property over and above the amount of plaintiff's mortgage and the taxes upon said property as their homestead, and that it was so adjudged in the said former action, and that the judgment and proceedings in that suit now barred said defendants from denying the validity of the plaintiff's mortgage.

Upon the trial the court found that the only consideration for the plaintiff's mortgage was a claim of $154.29, for goods sold by the plaintiff to the defendant Charles M. Chamberlain, and that the mortgage was fraudulent and void as to creditors. The mortgages of the defendant McPherrin were foreclosed as prayed, and the court found that the judgment of the National Bank of Commerce was dormant and not a lien, and that the defendant Dew had a valid judgment, amounting then to $7,254.11, which was a valid lien upon the premises, subject to the homestead interest of the defendant Chamberlain and the respective liens of plaintiff and defendant McPherrin, and that the value of the property was $3,500; that the judgments against Charles M. Chamberlain were first liens "upon said homestead premises of the defendants Charles M. Chamberlain and Edith R. Chamberlain, after their said homestead right of $2,000 has been taken from said premises," and "that out of the $2,000 homestead right there shall be first paid" the plaintiff's claim, as found by the court, and the McPherrin mortgages. And, "after the payment of the said sums to the said plaintiff and the defendant James A. McPherrin, the balance of the said $2,000 right of the defendants Chamberlain shall be paid to the said Charles M. and Edith R. Chamberlain." The plaintiff and the defendant Charles M. Chamberlain have appealed to this court.

At the time that the note and mortgage were executed, and for some time prior thereto, the plaintiff was engaged in mercantile business in the city of Tecumseh, in Johnson county, and the defendant Charles M. Chamberlain was owing him for goods sold in an amount found by the court to be the sole consideration for the mortgage. The plaintiff's wife, who was possessed of property in her own right, had money upon deposit in the Chamberlain Banking House, a corporation doing banking business, of which defendant Charles M. Chamberlain was cashier. The amount of this deposit was at that time $761.83, which it appears had been so on deposit for some time. The plaintiff testifies that some days before the mortgage was given he spoke to Mr. Chamberlain about taking the money deposited in the bank in Mrs. McLanahan's name and making some loans. Mr. Chamberlain did not want the money taken out of the bank, and he offered to sell Mr. McLanahan some securities which the bank had, and when Mr. McLanahan declined to buy the securities Mr. Chamberlain told him that he would not lose anything by leaving the money in the bank. And in another part of his testimony Mr. McLanahan says: "Mr. Chamberlain told me to leave the money in the bank, that he would secure me against any loss that might occur at any time." Soon after these conversations Mr. and Mrs. Chamberlain executed the mortgage. It was upon the homestead in which they were both interested. It was in the hands of Mrs. Chamberlain, and was by her delivered to Mr. McLanahan. Mr. Chamberlain testifies that his instructions were not to deliver it until Mr. True, who was employed in the bank, directed it to be done, and it appears that Mr. True never directed such delivery. But Mrs. Chamberlain herself had some authority in the premises, and Mr. Chamberlain having left it with her for delivery, without making any condition so far as Mr. McLanahan knew, he might receive it from her as a compliance with the agreement to secure his claims, and Mr. Chamberlain ought not to be allowed to question the delivery

five or six years later, in view of the circumstances surrounding the transaction, which cannot be enumerated here. Evidence of delivery is in any view of the case sufficient to support the finding of the trial court.

We have already indicated that the trial court found that the mortgage was valid as between the parties, but was fraudulent and void as to creditors, and also found a partial failure of consideration, it appearing to be the opinion of the trial court that the mortgage was invalid as a security for the bank deposit which was in Mrs. McLanahan's name. Owing to the numerous conflicting claims of the parties and the disconnected condition of the evidence, we have found it necessary to devote unusual care to the consideration of these two points in the findings of the court, and we are constrained to say that we are unable to find in the evidence a basis for the conclusion of the court thereon. We cannot find that the note and mortgage were given in settlement of the account of Mr. McLanahan or of the deposit in the name of his wife. The evidence in regard to the consideration for the mortgage is to be found in the testimony of Mr. Chamberlain and Mr. McLanahan. The mortgage was given on one year's time, without interest, and Mr. Chamberlain does not give any other reason for executing the mortgage or any explanation of the purpose for which it was executed than that testified to by Mr. McLanahan. He denies that he authorized its delivery, but he does not deny that he executed it for the purpose of securing these two claims. The two claims, together with interest, would amount, at the time of the maturity of the mortgage, to very nearly the amount of the mortgage. There is a small variance, whether the interest be computed at the rate of 7 per cent. or 8 per cent. In the one case the claim would amount to a little more than the mortgage, and in the other to a little less. The variance in the amount is sufficient, however, to indicate that the mortgage was not given in settlement of the claims, but rather to secure them, and Mr. McLanahan's testimony is en-

tirely to that effect. He says: "The mortgage was handed to us against anything we might have there," and explains this to mean any claim that he and his wife might have against Chamberlain or the bank. And again he says: "They offered to secure me, which they did, and I accepted it and considered my claim good." Again he testified: "That is what I mean to say, he would secure me against any other loss. Q. You mean any other deposit of your wife's? A. No; against any business I might do there. Q. It was a blanket security for something that was going to happen in the future? A. It might be. Q. It didn't cover your wife's account at all? A. I think it covered everything we had there. Q. So far as any talk you had with Mr. Chamberlain there that day at the barn it didn't cover that deposit, because that deposit wasn't mentioned, as you told me before? A. It didn't cover that only."

There is much said in the evidence and also in the briefs in regard to the statute of frauds. It seems to have been thought by some that the promise by Mr. Chamberlain made to Mr. McLanahan to secure the deposit in the bank in the name of Mrs. McLanahan was a promise to answer for the default of others and must be in writing, but the note and mortgage themselves constitute a sufficient writing for this purpose. The evidence given by the parties upon this point does not go to the form or sufficiency of the writing, but to the consideration, which may always be inquired into; and we do not see how the statute of frauds has any application to this question. There is not much evidence as to any distinction between the property and estate of Mr. McLanahan and that of his wife. He testified that he deposited this money in this bank in his wife's name because he had money deposited in another bank in his own name, and he wanted to keep the accounts with the two banks separate. The evidence shows that he acted in all respects for his wife, so far as she was interested, and there is no other evidence on this point. It was this particular deposit that Mr. Chamberlain was

anxious to retain in the bank, and after his promise to secure it he did retain it. By leaving this deposit in the bank, Mr. and Mrs. McLanahan would have lost it substantially but for the security. We think that the trial court should have found from this evidence that this mortgage was a valid security for both of these claims.

The finding that this mortgage was fraudulent and void as against the creditors, so far as we can see, is equally unsupported by the evidence. The claims of Mr. and Mrs. McLanahan were in good faith. This is not questioned by any one. The mortgage which was received by them was security, and, as we have already seen, was substantially equal to the amount of their claims. The difference, if any, depended upon the rate of interest computed, and would in any event be insufficient to furnish a badge of fraud. This mortgage was made and recorded before the date of the Dew judgment, and we are unable to see upon what theory it should be paid out of the homestead exemption. The homestead law is to be liberally construed to furnish a home for Mrs. Chamberlain and her children, and it has been many times determined that the homestead exemption against a judgment is to be allowed over and above all liens that are prior to the judgment. A mortgage executed and delivered after the lien of a judgment had attached would of course be subject to that lien. The judgment lien is upon the excess value of the property over and above the $2,000 homestead right and prior liens. Such a judgment lien cannot be diminished or affected by subsequent liens, whether by judgment or conveyance.

The date of the judgment of the defendant Florence M. Dew was May 11, 1903, more than five and one-half years before the commencement of this action. The defendant Chamberlain has made reply to her answer herein, in which he seeks to have her judgment set aside for alleged irregularities in obtaining the same. These irregularities consist mostly in alleged errors of the court in the trial of the former action, and neglect of counsel employed by

Mr. Chamberlain therein. We recognize the necessity of limiting the discussion in this opinion, already too long, and without determining as to the availability of such a defense in an action of this kind, or reviewing the somewhat voluminous evidence offered, we find that the evidence supports the conclusions of the trial court in regard to the facts involved.

The defendant Florence M. Dew was the widow of Robert L. Butler, deceased, and as such was duly appointed administratrix. She was married again after the recovery of the judgment and before the commencement of this action. Section 5053, Ann. St. 1909, provides: "When an unmarried woman who is administratrix alone, or jointly with another person, shall marry, her marriage shall extinguish her authority as administratrix." It is now insisted that her authority as administratrix having been extinguished by her subsequent marriage, she could not in this action defend the lien of the judgment which she had recovered. The statute quoted was section 13, ch. VII of the "Act providing for the settlement of the estates of decedents," etc. Laws 1860-1861, p. 85. The act of 1871 (laws 1871, p. 68) was a general act removing the disabilities of married women, and of course repeals all former acts upon that subject inconsistent therewith. In *Omaha H. R. Co. v. Doolittle*, 7 Neb. 481, the court said: "In *Pope v. Hooper*, 6 Neb. 178, 187, it is held that the act of 1871 wholly removed the common law disability of married women." Section 17 of the code was also enacted prior to the law of 1871. That statute assumed that married women could not maintain an action in the courts, and provided that the statute of limitations should not apply to married women. In *Murphy v. Evans City Steam Laundry Co.*, 52 Neb. 593, it was held that this provision was repealed by implication by the act of 1871. By the same reasoning it would seem that by the present statutes a married woman can act as administratrix. At all events, Mrs. Dew was qualified to defend in this case the judgment which as such administratrix she had ob-

tained. *Schroeder v. Superior Court,* 70 Cal. 343; *McMillan v. Hayward,* 94 Cal. 357; *Buckley v. Buckley,* 16 Nev. 180. It is also insisted that her attorneys, under the contract for their services in procuring it, had an interest in the judgment. No lien was filed nor any assignment executed. Execution upon this judgment must of course have been taken in the name of the judgment creditor, and she was the proper party to assert the validity and lien of the judgment in behalf of all parties interested.

This was the first judgment lien as found by the court. It was entered May 11, 1903. It was subject to plaintiff's mortgage and could not affect the lien of that mortgage. Plaintiff's mortgage should therefore be collected out of the excess value of the property over the $2,000 homestead right, if such excess was sufficient for that purpose; if not sufficient, the homestead would be liable for the deficiency. The McPherrin mortgages were both subject to this judgment and could not affect the lien thereof.

The excess value of the property over the $2,000 homestead right should be applied, first, to payment of the costs herein; second, to the satisfaction of plaintiff's mortgage; third, to the satisfaction of the Dew judgment; and, fourth, upon the McPherrin mortgages. After so applying the proceeds not exempt, the remainder of the plaintiff's mortgage and the McPherrin mortgages should be satisfied out of the homestead exemption, the balance of the homestead exemption to be paid to Mr. and Mrs. Chamberlain.

As already suggested, the plaintiff's claims were not surrendered or extinguished by the giving of the mortgage as security therefor. He should therefore recover the amount of his original claims as fixed by the trial court, with interest thereon at 7 per cent. per annum.

It does not appear to be necessary to discuss the effect of the former litigation as barring the defendants' right to question the validity of plaintiff's mortgage.

We cannot extend this opinion for an exhaustive discussion of the numerous questions raised as to the admis-

sion and exclusion of evidence, and supposed irregularities upon the trial. We do not find any errors affecting the merits of the controversy, further than above stated, requiring any action on the part of this court. Some of the matters complained of may be briefly mentioned.

To prove the signatures to the note the plaintiff called Mr. Chamberlain, who of course was an interested witness, and, after he had asked him as to these signatures, the witness' counsel desired to cross-examine the witness as to the delivery of the note and mortgage and the circumstances surrounding the giving of the securities. The court did not exceed his discretion in refusing to allow this cross-examination. The court excluded the written contract as to attorney fees in obtaining the Dew judgment, and refused to order a copy of the contract so excluded to be furnished for use in making the bill of exceptions. Of course counsel should be allowed to make the contract so offered a part of his bill of exceptions. In no other way could he present the ruling thereon to this court for review. This deficiency could have been supplied upon the settlement of the bill, and counsel should have then insisted upon his rights in that regard. In the view of the case which we have already expressed, this contract could not affect the results of this controversy.

Some of the judgments against Mr. Chamberlain are attacked on the ground that no summons was served on defendant and no appearance made. Service was made by copy of summons, and the first objection is that the service was not at the usual place of residence of defendant. The defendant had left the state and his whereabouts were unknown. His wife and minor children continued to reside in the dwelling in Tecumseh where defendant had resided with them previous to his hasty departure. There is no evidence that he made any attempt to remove his family or to acquire any other residence for himself. The presumption that his residence is with his family is so strong as to overcome this objection, and the trial

court was right in holding that the home of his family was to be regarded in law as his residence.

The return on the summons in the case of John Ward, receiver for the Chamberlain Banking House, in which judgment was entered January 7, 1903, for $706.50, states that it was served by leaving "at his *last* known place of residence a true and certified copy," etc. In *Ruby v. Pierce,* 74 Neb. 754, the syllabus is as follows: "An officer's return to a summons, showing service by leaving at the 'last' usual place of residence of the defendant, does not show a compliance with the statute authorizing service by leaving a copy at the usual residence of the defendant, and a judgment based thereon is void for want of jurisdiction," and the opinion is to the same effect. Although this holding would to the writer appear to be somewhat technical, yet it must be considered as settling the law of this state upon that question. The original process in an action at law is the foundation of all future proceedings in the case. If the service is made in compliance with the statutes, the defendant is bound to take notice of everything that is done in the case thereafter. The statute is simple, and there is no reason for excusing the officer from complying with it. The service in this case is a much further departure from the method prescribed by the statute than was the service in the case just cited. The officer must *know* the usual place of residence of the defendant or he cannot serve the summons by a copy left thereat. In this case he certified that he left the copy at the last place which he knew to be the residence of the defendant. He does not say, nor are there any words in the return that indicate, that he left the copy of the summons at the place of residence of the defendant at the time of the service. In fact, the implication from the return is that the place where he left the copy was not the residence of the defendant at that time. Under the holding in *Ruby v. Pierce, supra,* the judgment rendered on such a service is absolutely void.

The judgment rendered in an action between the same

parties on the 10th day of December, 1903, is not subject to the same criticism. The return of the summons shows a legal service. The finding of the trial court as to validity of this lien is amply supported.

It was also objected that the plaintiff did not prove that there had been "no action at law to recover his claim." The petition contained the allegation; and we think the evidence in the record is sufficient to put the defendant upon proof of the affirmative of the proposition which he maintains.

The decree of the district court is reversed as to the issues tendered by the plaintiff, and as to priority of the liens of McPherrin's mortgages and of the Dew judgment and the judgments of John Ward, receiver, and the cause is remanded, with instructions to allow amendments and take further evidence, if necessary, in accordance with this opinion, and in all other matters the decree of the district court is affirmed. The costs of this appeal will be taxed, one-half against the plaintiff and one-half against the defendants Charles M. and Edith R. Chamberlain.

JUDGMENT ACCORDINGLY.